UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK WILLIAMS,<br><br>     Petitioner,<br><br>  vs.<br><br>DALE ARTUS, Superintendent, Clinton Correctional Facility,<br><br>     Respondent. | No. 9:07-cv-00168-JKS<br><br>MEMORANDUM DECISION |

  Petitioner Mark Williams, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Respondent has answered, and Williams has filed his traverse. Williams is presently in the custody of the New York Department of Correctional Services incarcerated at the Clinton Correctional Facility.

## I. BACKGROUND/PRIOR PROCEEDINGS

  Williams was convicted in July 2004 after a trial by jury in the Ulster County Court of murder in the second degree (N.Y. Penal Law § 120.25(1)). Williams was sentenced to an indeterminate term of 25 years to life. Williams timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction in a written, reasoned decision, and the New York Court of Appeals summarily denied leave to appeal on July 21, 2006.[1]

  Williams timely filed his petition for relief in this Court on February 15, 2007.

## II. ISSUES RAISED/DEFENSES

  In his petition Williams raises nine grounds: (1) verdict was unsupported by the weight of the evidence; (2) impermissible admission of hearsay evidence concerning Williams' prior relationship with the victim; (3) sentence was unduly harsh and excessive; (4) ineffective assistance of counsel and right to fair trial; (5) a *Brady* violation; (6) broken chain of custody for

---

[1] *People v. Williams*, 815 N.Y.S.2d 330 (N.Y. App. Div.), *lv. denied*, 854 N.E.2d 1291 (N.Y. 2006).

the gunshot residue; (7) detectives committed perjury; (8) statement to police was coerced; and (9) trial judge was not impartial.

Respondent contends that Williams' fourth and ninth grounds are unexhausted and procedurally barred. Respondent has asserted no other affirmative defense.[2]

### III. STANDARD OF REVIEW

Because Williams filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Consequently, this Court cannot grant relief unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision.[4] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5] When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable," "not just incorrect."[6] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[7] Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of

---

[2] *See* Rules—Section 2254 Cases, Rule 5(b).

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412.

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[6] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939 (2007).

constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[8]

In applying this standard, this Court reviews the last reasoned decision by the state court.[9] In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[10]  If a federal claim has not been adjudicated on the merits, AEDPA deference is not required.[11]  In that situation, conclusions of law and mixed questions of fact and conclusions of law are reviewed *de novo*.[12]  A state court decision is conclusively presumed to have been on the merits when the state court disposes of the claim on other than procedural grounds, even where it fails to provide any reasoning for the disposition.[13]  Where there is no reasoned decision of the state court addressing the ground or grounds raised by Williams on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[14]

## IV.  DISCUSSION

Ground 1:  Weight of the Evidence.

Williams argues that his conviction was against the weight of the evidence.  Under New York law, the Appellate Division employs two standards of review—legal sufficiency and weight of the evidence.  Although related, each requires a discrete analysis.  Under the sufficiency of the evidence standard the Appellate Division must determine whether there is a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury on the basis of evidence at trial.  Under the weight of the evidence standard, the court

---

[8] *Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[9] *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[10] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[11] *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

[12] *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).

[13] *See Jimenez v. Walker*, 458 F.3d 130, 145–46 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 976 (2007) (Mem).

[14] *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006).

must examine the evidence further. If based upon all the credible evidence a different finding would not have been unreasonable, the Appellate Division must weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.[15] In determining the weight of the evidence, the Appellate Division not only determines credibility issues, it must assess the evidence in light of the elements of the crime as charged to the jury.[16] That is, the Appellate Division "must consider the elements of the crime, for even if the prosecution's witnesses are credible their testimony must prove the elements of the crime beyond a reasonable doubt."[17]

The Appellate Division, after thoroughly reviewing the evidence, rejected Williams's position.[18] To the extent that Williams' argues the weight of the evidence under New York law, it is beyond the purview of this Court in a federal habeas proceeding.[19] The constitutional standard for sufficiency of the evidence, as stated in *Jackson v. Virginia*, is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[20] This court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Williams misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[21] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it

---

[15] N.Y. Crim. Proc. Law § 470.15[5]; *People v. Bleakley*, 508 N.E.2d 672, 674–75 (N.Y. 1987).

[16] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

[17] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[18] The reasoned decision of the Appellate Division on this ground is set forth in the Appendix.

[19] *Garrett v. Perlman*, 438 F .Supp. 2d 467, 470 (S.D.N.Y. 2006).

[20] 443 U.S. 307, 319 (1979) (emphasis in the original).

[21] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

must undertake its inquiry by reference to the elements of the crime as set forth in state law.[22] This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law. That such evidence exists is clearly established by the record in this case. Williams bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Williams has failed to carry. Here, the Appellate Division, a state court, found that there was sufficient evidence to support conviction of the crimes under state law. Under AEDPA this Court must defer to that decision in a federal habeas proceeding.

Williams is not entitled to relief under his first ground.

Ground 2: Admission of Hearsay Evidence.

Williams argues that the introduction of hearsay evidence concerning his prior abusive, controlling and threatening behavior toward the victim (testimony of complaints made by the victim to third parties about the way that Williams mistreated her) was erroneous and prejudicial. In rejecting Williams's arguments, the Appellate Division held:

> Next, contrary to defendant's contention, County Court did not abuse its discretion in permitting evidence of defendant's prior abusive, controlling and threatening behavior toward the victim as it provided necessary background information as to their relationship and also bears on motive and intent (citations omitted). Additionally, the probative value of this evidence far outweighs any unfair prejudice (citations omitted).

The hearsay rule and its exceptions are rules of evidence. The United States Supreme Court has never held that the hearsay evidence is excluded by the Constitution of the United States except to the extent it violates the confrontation clause of the Sixth Amendment.[23]

---

[22] *Jackson*, 443 U.S. at 324 n.16.

[23] *See Crawford v. Washington*, 541 U.S. 36 (2004), abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980). The testimony at issue in this case is clearly "non-testimonial." There is no indication that the declarant had any reasonable expectation that the statements would be used in future judicial proceedings. *See United States v. Saget*, 377 F.3d 223, 228–30 (2d Cir. 2004) (discussing and defining "testimonial" evidence).

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[24] "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[25] "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[26]

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[27]

As the Appellate Division applied the same standard as applied in the federal courts, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[28] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Williams is not entitled to relief on his second ground.

---

[24] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[25] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[26] *Estelle v. McGuire*, 502 U.S. at 72, quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983).

[27] *United States v. Abel,* 469 U.S. 45, 54 (1984).

[28] 28 U.S.C. § 2254(d).

Ground 3:  Sentence Unduly Harsh and Excessive.

Williams argues that the sentence imposed was unduly harsh and excessive, asserting that evidence was minimal and the sentence was based upon the "annoyance at petitioner for asserting his innocence & his right to a fair trial."  Williams presented this issue on his direct appeal.  The Appellate Division summarily rejected his argument: "Defendant's remaining contentions, including the claim that his sentence was harsh and excessive and those contained in his pro se brief, have been reviewed and rejected."

Williams provides no factual support for his conclusory statement.  The sentence imposed was within the range of sentences prescribed by statute for the crime of which he was convicted.[29]  In general, a sentence imposed within the limits of the statute presents no constitutional issue cognizable in a federal habeas proceeding.[30]  To the extent Williams has raised an Eighth Amendment cruel and unusual punishment claim, suffice it to say the sentence Williams received is not grossly disproportionate to the crimes he committed.[31]

This Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[32]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Williams is not entitled to relief on his third ground.

---

[29] N.Y. Pen. Law §§ 125.25; 70.00(2), (3).  The maximum term, life, was prescribed by statute.  Williams could have been sentenced to a minimum term of between 15 years and 25 years.

[30] *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

[31] See *Solem v. Helm,* 463 U.S. 277, 289-90 (1983); *Rummel v. Estelle*, 445 U.S. 263, 275–76 (1980); *Ewing v. California*, 538 U.S. 11 (2003).

[32] 28 U.S.C. § 2254(d).

Ground 4: Ineffective Assistance of Counsel.

Williams alleges that his trial counsel was ineffective. The petition simply alleges, without elaboration, factual support or further explanation, that he was denied effective assistance of counsel because the "sole defense att. egregiously lacking (*sic*) competence."[33] Respondent correctly asserts that this ground is entirely conclusory and unsupported by any factual or legal argument. Williams "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[34]

The petition must specify all the grounds for relief available to the petitioner and the facts supporting each ground.[35] If it plainly appears on the face of the petition that petitioner is not entitled to relief, a district court must dismiss the petition.[36] The district court may dismiss on this basis *sua sponte* after initial screening and an answer has been ordered and filed.[37] As the Supreme Court has stated:[38]

> Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important ... ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)). Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:
>
>> "**CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you**

---

[33] In his traverse, Williams devotes 14 handwritten pages to this issue.

[34] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[35] Rules—Section 2254 Cases, Rule 2(c).

[36] Rules—Section 2254 Cases, Rule 4.

[37] *See Day v. McDonough*, 547 U.S. 198, 207–09 (2006).

[38] *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005).

> **fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**" Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).

It plainly appears from the petition that Williams is not entitled to relief under his fourth ground.[39]

In any event, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[40] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Ground 5:  *Brady* Violation.

In his petition Williams simply asserts, without elaboration or explanation, that the prosecutor acted in bad faith and failed to disclose mitigating evidence in violation of *Brady*.[41] Respondent correctly asserts that this ground is entirely conclusory and unsupported by any factual or legal argument. Williams raised this point in his *pro se* supplemental brief on direct

---

[39] Respondent also contends that this ground is unexhausted and procedurally barred. As a result of the foregoing ruling, the Court need not reach those issues.

[40] 28 U.S.C. § 2254(d).

[41] *Brady v. Maryland*, 373 U.S. 83 (1963).

appeal.  The Appellate Division summarily rejected his argument: "Defendant's remaining contentions, including the claim that his sentence was harsh and excessive and those contained in his pro se brief, have been reviewed and rejected."  Just as Williams failed to identify the *Brady* material in his *pro se* brief filed with the Appellate Division, Williams failed to identify the *Brady* material in his petition in this Court.

For the reasons given in denying relief under his fourth ground, Williams is not entitled to relief under his fifth ground.

Ground 6:  Broken Chain of Custody.

Williams alleges in his petition that the "chain of custody protocol for gunshot residue 'preposterous.'"  Williams does not, however, set forth any factual basis for this conclusory statement.  Respondent correctly asserts that this ground is entirely conclusory and unsupported by any factual or legal argument.  In his *pro se* brief filed with the Appellate Division, Williams refers to the fact the GSR sample was sent out of state.  How this makes the chain of custody "preposterous" does not appear.  The Appellate Division summarily rejected his argument: "Defendant's remaining contentions, including the claim that his sentence was harsh and excessive and those contained in his pro se brief, have been reviewed and rejected."

For the reasons given above in denying relief under his fourth ground, Williams is not entitled to relief under his sixth ground.

Ground 7:  Detective Perjury.

In his petition, Williams alleges without elaboration, factual support or explanation that "[d]etectives lied under oath."  Respondent correctly asserts that this ground is entirely conclusory and unsupported by any factual or legal argument.  Williams raised this issue, albeit somewhat obliquely, in his *pro se* brief filed in the Appellate Division, simply stating "I must also object to trial testimony of detectives and various People's witnesses' statements obviously 'coached' by the DA."  Williams points to no evidence to support his conclusory allegations.  The Appellate Division summarily rejected his argument: "Defendant's remaining contentions, including the claim that his sentence was harsh and excessive and those contained in his pro se brief, have been reviewed and rejected."

For the reasons given above in denying relief under his fourth ground, Williams is not entitled to relief under his seventh ground.

Ground 8:  Coerced Statement.

In his petition Williams claims, without elaboration, factual support or explanation, that "coercion, duress used to elicit statements."  Respondent correctly asserts that this ground is entirely conclusory and unsupported by any factual or legal argument.

The trial court, in denying the motion to suppress, held:

> At this hearing today, we've had testimony from five witnesses all involved in law enforcement, all involved in the investigation of an incident of March twenty-first, 2003, which incident came to their attention as a result of a 911 call made by William Sickler who discovered an unconscious, unresponsive female on Katrine Lane in the Town of Ulster.
>
> Various officers responded to that scene, spoke to a number of different witnesses and as a result of that investigation received information that a white male in a white van had been seen in the area a short time prior to the discovery of the victim, that he had been at her place of employment earlier in the day, and that ultimately lead to an investigation which lead to the apprehension of this Defendant.
>
> Some time later on the day in question at the Ryder Park in the Town of Ulster, the Defendant was apprehended by Deputy Bruck at the scene, at the Ryder Park scene, ultimately taken to the Ulster County Sheriff's Department where a statement was taken from him over the course of approximately four hours and eighteen minutes.
>
> At the Sheriff's Department, Detective Brewster advised the Defendant of his Miranda rights from memory, Detective Reynolds advised him of his Miranda rights by reading from a card, and at that time the Defendant after -- being advised of his rights on those occasions, the Defendant acknowledged that he understood those rights and did speak to the officers mostly Detective Reynolds.  Never requested that an attorney be provided or that he be allowed to contact an attorney, and ultimately, when he said he did not want to speak any more, the interview shut down and no further questioning was done of the Defendant.
>
> As a result, I find that the Defendant, Mark Williams, understood what his Miranda rights were and made a knowing, intelligent and voluntary waiver of those rights when he did discuss this matter and when he did consent to be interviewed in regards to it, and therefore, the motion to suppress any statements made by him to law enforcement is denied.

The factual findings of the trial court must be accepted by this Court unless Williams controverts them by clear and convincing evidence. This burden Williams has failed to shoulder. Williams raised this issue in his *pro se* brief filed with the Appellate Division on direct appeal. In that document Williams refers to several places in the transcript of the suppression hearing where he was not responding to questions but to only one point at which he indicated that he did not want to talk any longer, at which point, as the trial court found, the interrogation ceased. The Appellate Division summarily rejected his contention that his statements were coerced: "Defendant's remaining contentions, including the claim that his sentence was harsh and excessive and those contained in his pro se brief, have been reviewed and rejected."

This Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[42] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Alternatively, for the reasons given above in denying relief under his fourth ground, Williams is not entitled to relief under his eighth ground.

Ground 9:  Biased Judge.

In his petition Williams asserts that "the trial judge was not a disinterested, impartial arbiter of law" and "judge's motives & DA's motives political." Williams does not set forth any factual basis for this conclusory statement, nor does it appear that Williams addressed the issue in his traverse. Respondent correctly asserts that this ground is entirely conclusory and unsupported by any factual or legal argument.

---

[42] 28 U.S.C. § 2254(d).

For the reasons given above in denying relief under his fourth ground, Williams is not entitled to relief under his ninth ground.[43]

## V.  CONCLUSION AND ORDER

Williams is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[44]  To the extent the issues raised in the petition were addressed by the Appellate Division, Fourth Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated:  March 19, 2009.

>                /s/ James K. Singleton, Jr.
>          JAMES K. SINGLETON, JR.
>          United States District Judge

---

[43] Respondent also contends that this ground is unexhausted and procedurally barred.  As a result of the foregoing ruling, the Court need not reach those issues.

[44] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

APPENDIX

We are unpersuaded by defendant's claim that the verdict was not supported by the weight of the evidence. At trial, it was established that less than two hours before the murder, defendant showed up unexpectedly[FN1] at the victim's place of employment, unkempt and "glassy eyed." The victim was visibly shaken and frightened by his presence in her office and his reemergence into town. Defendant was asked to leave by the victim's supervisor, and he did so. Despite coworkers' advice to the contrary, the victim left work and went home on her lunch hour. While there, defendant pulled into her driveway, waited and ultimately pulled away. Despite her mother's concerns for her safety, the victim left to return to work. Within 10 minutes of her departure, she was shot one time in the head inside her vehicle at an intersection a short distance from home.

In the meantime, numerous workers at a local warehouse near the victim's home observed a white van parked short of an intersection with Katrine Lane. The driver of that van, unequivocally identified at trial by three of these coworkers as defendant, was looking down Katrine Lane as he slouched in his van. Two of these witnesses specifically established that defendant was the sole occupant of the van. Two other employees testified that, while eating their lunch outside, they heard a "loud clap" in the vicinity of this intersection and seconds later observed the white van drive away. The victim was found slumped over in her idling vehicle shortly thereafter.

Approximately one hour after the victim was discovered, the white van was located in a nearby park along the Hudson River. A soaking wet defendant was then seen emerging from some woods carrying a fishing pole. Upon being questioned by police, he orally admitted that he visited the victim at her place of employment that afternoon in an effort to get back together with her and that he also parked his white van in her driveway during her lunch hour. He denied killing her, initially claiming that when he left her house, he drove around and then went fishing. Upon being informed that numerous witnesses had placed him and his van in close proximity to the scene, he finally admitted that he was there and that he had words with the victim. He continued to deny that he killed her, claiming instead that his unnamed terrorist companion from Florida shot her.

The People further presented evidence that a torn shirt sleeve, later confirmed to belong to defendant, and a handkerchief were found tied around a brick in the Hudson River. Moreover, particles of gunshot residue were detected on his hand and shirt. While no weapon was ever found or blood detected on defendant or his clothing, we are nevertheless satisfied, viewing the evidence in a neutral light but according due deference to the jury which heard and observed the witnesses, that the verdict was not against the weight of the evidence (citations omitted).[FN2]

> FN1. The victim had not seen defendant since their breakup several months earlier, at which time he left the Ulster County area.

> FN2. With respect to the absence of blood evidence connecting defendant to this murder, we note that testimony was provided establishing that water would dilute any blood and, more importantly, that the victim's wound was such that there would have been no splattering of blood back towards her shooter.

MEMORANDUM DECISION – APPENDIX
*Williams v Artus*, 9:07-cv-00168-JKS